# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KRISTEN KISHPAUGH,** | : | **Civil No.  3:23-CV-00926** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LELAND DUDEK,**[1] | : | |
| **Acting Commissioner of Social Security** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I.    Introduction

For Administrative Law Judges (ALJs) a key element in any Social Security disability decision is ascertaining the claimant's residual functional capacity or RFC; that is, the most that the claimant can do despite his or her impairments. This determination entails an assessment of the claimant's severe and non-severe impairments, and often involves an evaluation of the persuasive power of various medical opinions. Frequently these issues are interrelated. Thus, the decision

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for the previously named defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

regarding a claimant's RFC often depends upon the ALJ's judgment concerning the persuasive power of various medical opinions. An ALJ undertakes these tasks guided by regulations which call upon the ALJ to assess each medical opinion in terms of its consistency and supportability.

Once the ALJ has made this decision, on appeal it is the Court's responsibility to decide whether substantial evidence, fully articulated by the ALJ, supports the disability determination. This "substantial evidence" test is a highly deferential standard of review. As the Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). Under this standard of review, we are obliged to affirm the decision of the ALJ once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)).

In the instant case, we are called upon to decide whether substantial evidence, which was adequately articulated by the ALJ, supported the ALJ's evaluation of Kristen Kishpaugh's severe and non-severe impairments and the related question of whether the ALJ erred in finding the opinion of Kishpaugh's counselor, Jeanne Fink, unpersuasive. Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we conclude that substantial evidence supported the ALJ's mental RFC determination and medical opinion findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

3

## II.    Statement of Facts and of the Case

### A. Background

The administrative record of Kishpaugh's disability application reveals the following essential facts: On July 8, 2019, Kishpaugh applied for disability insurance benefits pursuant to Title II of the Social Security Act, alleging an onset of disability beginning June 2, 2018. (Tr. 15). The plaintiff later amended her onset date to July 9, 2019. (Tr. 17). Kishpaugh's application alleged that she was completely disabled due to a number of physical and emotional impairments, including adjustment disorder with mixed anxiety and depression; attention deficit hyperactivity disorder; dissociation; and post-traumatic stress disorder. (Tr. 18). She also described some lesser physical impairments in her disability application, including hyperlipidemia, constipation, skin lesion, and migraines. (Id.) Kishpaugh was born on June 14, 1965, and was 53 years old on the alleged disability onset date, which is defined as an individual closely approaching advanced age under the Commissioner's regulations. (Tr. 24). She had a high school education and prior employment as a receptionist and an exotic dancer prior to the alleged onset of disability. (Tr. 23-24). At the time of these disability proceedings, Kishpaugh was studying to become a real estate agent and was reporting that she was doing well in these studies. (Tr. 1111).

B. **Kishpaugh's Clinical History**

At the time of the alleged onset of her disability, Kishpaugh was receiving treatment for her various medical and emotional conditions from two primary sources: the Penn State Health Milton Hershey Medical Center and Jeanne Fisk, a Licensed Professional Counselor. The treatment records of these two sources documented some degree of emotional impairment on Kishpaugh's part, but in the main described the severity of these impairments in terms which were not wholly disabling.

For example, the records of Penn State Health, which treated Kishpaugh from 2018 through the Fall of 2021, consistently stated that her mood was euthymic, her memory was intact, her speech was fluent and appropriate, her thought content was normal, and her thought process was linear and goal oriented.[2] Moreover, many of these treatment notes indicated that Kishpaugh's condition was stable and did not significantly impair her daily functioning. For example, an August 5, 2019, treatment note indicated that Kishpaugh denied significant depression and denied difficulty completing tests due to her anxiety. (Tr. 565). Likewise, treatment records from March 8, 2021, stated that: "Overall she is doing great," and indicated that she

---

[2] See Tr. 306, 318, 325, 327, 537, 566, 591, 743, 902, 912, 952, 1034.

displayed an improved mood and great outlook. (Tr. 741). At that time, it was reported that Kishpaugh's anxiety disorder was well controlled. (Id.)

The longitudinal treatment records of Kishpaugh's counselor, Jeanne Fisk, also described her emotional impairments in terms which were not wholly disabling. Fisk treated Kishpaugh from August 2018 through January 2021. (Tr. 597-732, 1055-1134). Over this extended period, Fisk's treatment notes consistently described Kishpaugh as interactive, with an appropriate affect and an intact functional status. (Id.) These treatment records documented some fluctuation in Kishpaugh's mood and orientation over time, but the treatment notes often described her mood as euthymic or stable, or indicated that she was fully oriented. Moreover, in those instances where the notes did not reflect these completely benign observations the most common observation was that Kishpaugh was oriented but anxious.[3] Further, Fisk's notes indicated that, in July of 2021, Kishpaugh was reporting perfect grades in her real estate examinations and stated that she was able to vacation at Hershey Park with family. (Tr. 1111).

These clinical notations were bolstered by the findings of a consultative examining source, Dr. John Miller, who conducted an examination of Kishpaugh on

---

[3] See Tr. 597, 601, 603, 604, 611, 621, 633, 639, 647, 655, 663, 673, 679-716, 722, 1080-1134.

March 24, 2021, as part of the disability determination process. (Tr. 751-56). At that time Dr. Miller described Kishpaugh as cooperative with adequate social skills. (Tr. 753). Her posture and mood behavior were normal, and her eye contact was adequate. (Id.) The doctor then assessed that her speech was fluent and clear; her sensorium was clear, and her attention, concentration, and orientation were intact. (Tr. 754). While Kishpaugh's mood and affect were anxious, Dr. Miller found that her judgment was good, her insight was fair, and she displayed average cognitive functioning. (Id.) According to the doctor, Kishpaugh also reported a wide array of activities of daily living including cooking, cleaning, self-care, laundry, shopping, and money management. (Id.)

## C. **The Medical Opinion Evidence**

Given this clinical history, a number of medical sources opined regarding the degree to which Kishpaugh's impairments were disabling. With one exception, these medical experts concluded that, with some limitations, Kishpaugh could meet the physical and emotional demands of the workplace.

With respect to Kishpaugh's physical impairments there was a complete consensus of opinion among the medical experts. As the ALJ noted:

> The record includes a January 2021 statement from a state agency medical consultant, Ruth Myers Arnold, DO, and an August 2021 statement from a state agency medical consultant, Louis Joseph

Tedesco, MD. They stated the claimant has no severe physical impairments.

(Tr. 22).

As for Kishpaugh's emotional impairments, with one exception, the experts who examined her case concluded that she experienced at most moderate, but not wholly disabling, impairments. In March of 2021, a state agency expert, Dr. Karen Plowman, examined Kishpaugh's medical records and found that she was moderately impaired in terms of understanding, remembering or applying information as well as concentrating, persisting, or maintaining pace. In terms of interacting with others and adapt or managing, Dr. Plowman found that Kishpaugh was only mildly impaired. (Tr. 65). Accordingly, the doctor determined that, in the workplace, Kishpaugh would be moderately impaired in terms of carrying out complex instructions and sustaining concentration over an extended period of time but was not otherwise significantly limited in her workplace functioning. (Tr. 68-70). Therefore, Dr. Plowman concluded that Kishpaugh: "is able to meet the mental demands for simple routine tasks on a sustained basis despite the limitations associated with her impairments." (Tr. 70).

In August of 2021, these findings were echoed on reconsideration by another state agency expert, Dr. Karen Weitzner. Dr. Weitzner also found that Kishpaugh

was moderately impaired in terms of understanding, remembering, or applying information as well as concentrating, persisting, or maintaining pace but only mildly impaired when it came to interacting with others and adapt or managing workplace changes. (Tr. 83). Dr. Weitzner also concluded that Kishpaugh was: "able to meet the mental demands for simple routine tasks on a sustained basis despite the limitations associated with her impairments." (Tr. 88).

On March 24, 2021, the consulting examining expert, Dr. Miller, reached similar conclusions. (Tr. 751-56). Based upon his examination of Kishpaugh, the doctor found that she would be moderately impaired in terms of her ability to carry out instructions, work with others, and adapt to workplace changes. (Tr. 756). However, nothing in Dr. Miller's report suggested that Kishpaugh suffered from marked or extreme emotional impairments. Thus, this medical consensus found Kishpaugh to be only mildly to moderately impaired due to her emotional conditions.

The only outlier opinion among these medical sources was the view expressed by Kishpaugh's counselor, Jeanne Fisk. (Tr. 1140-44). Despite her relatively unremarkable treatment notes spanning several years, on January 10, 2022, Fisk opined that Kishpaugh faced multiple extreme impairments in terms of meeting the emotional demands of the workplace. (Id.)

It was against this medical background that Kishpaugh's case came to be considered by the ALJ.

**D. The ALJ Decision**

A hearing was conducted in Kishpaugh's case on February 15, 2022. (Tr. 30-58). Following this hearing, on February 24, 2022, the ALJ issued a decision in this case denying Kishpaugh's disability claim. (Tr. 12-25). In that decision, the ALJ first concluded that Kishpaugh met the insured requirements of the Act through June 30, 2024, and had not engaged in substantial gainful activity since the alleged onset date of July 9, 2019. (Tr. 17). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Kishpaugh had the following severe emotional impairments: adjustment disorder with mixed anxiety and depression; attention deficit hyperactivity disorder; dissociation; and post-traumatic stress disorder. (Tr. 18). The ALJ also considered Kishpaugh's physical impairments but found that they were not severe stating:

> The record shows the claimant has a history of hyperlipidemia, constipation, skin lesion, and migraines (2F; 8F). Medication treated her hyperlipidemia (2F). Medication managed her constipation (2F). A shave biopsy treated her skin lesion (2F). In September 2021, the claimant's primary care provider noted the claimant's "[l]ast migraine was 2 weeks prior [to] our last visit. She has been migraine free since" (8F/66). There is minimal medical evidence of record the claimant received, since the amended alleged onset date, emergency room treatment, urgent care, or ongoing specialist care for her migraines. In

10

making this finding, the undersigned considered SSR 19-4p, pertaining to primary headache conditions. There is little evidence of record these impairments more than minimally limit the claimant's ability to perform sustained work tasks. Thus, the undersigned finds these conditions are non-severe impairments.

(Id.)

Nonetheless, the ALJ indicated that he: "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (Id.)

At Step 3, the ALJ determined that Kishpaugh did not have an impairment or combination of impairments that met or medically equaled the severity of one of the disability listing impairments. (Tr. 18-19). This Step 3 determination rested upon a comprehensive review of Kishpaugh's emotional impairments as reflected in her medical history. As the ALJ explained:

In understanding, remembering or applying information, the claimant has a moderate limitation. She argues she has difficulty remembering and slowed thought process (Hearing Testimony; 7E). However, she states she helps care for her 13-year-old daughter and can prepare microwaved meals, drive, shop in stores, pay bills, and count change (Hearing Testimony; 7E). This implies she can understand, remember, and apply information. Progress notes mostly show she is fully oriented with appropriate thought content, intact memory, good recall, good insight, and good judgment (2F; 3F; 4F; 7F; 8F; 9F; 11F).

In interacting with others, the claimant has a moderate limitation. The claimant alleges she has limited socialization (Hearing Testimony; 7E). Nonetheless, she notes she shops in stores and has no difficulty with

family, friends, neighbors, authority figures, and others (Hearing Testimony; 7E). This implies she can interact with others. During a March 2021 mental status consultative examination, she was fully oriented, well groomed, and cooperative with normal posture, normal motor behavior, appropriate eye contact, fluent and clear speech, adequate expressive and receptive language, clear sensorium, fair insight, and good judgment (6F).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant alleges she does not finish what she starts and has difficulty concentrating (Hearing Testimony; 7E). Regardless, the claimant indicates she helps care for her 13-year-old daughter; helps care for her dog; watches television; reads; and can drive, shop in stores, and pay bills (Hearing Testimony; 7E). This implies she can concentrate, persist, and maintain pace. At a March 2021 mental status consultative examination, she was fully oriented with clear sensorium, intact attention and concentration, fair insight, and good judgment (6F).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. She contends stress causes her to disassociate and she has panic attacks (Hearing Testimony; 7E). However, she reports she helps care for her 13-year-old daughter; has no problems with her personal care activities; and can do laundry, drive, shop in stores, and pay bills (Hearing Testimony; 7E). This implies she can adapt and manage herself. Longitudinal treatment notes generally show she is fully oriented with congruent affect, appropriate speech, appropriate dress, appropriate thought content, intact memory, good recall, good attention and concentration, good insight, and good judgment (2F; 3F; 4F; 7F; 8F; 9F; 11F).

(Tr. 18-19).

Between Steps 3 and 4, the ALJ then fashioned a residual functional capacity ("RFC") for the plaintiff which considered all of her impairments as reflected in the medical record, and found that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels and she should avoid exposure to excessive loud noises or bright lights. She has the mental capacity for work that is limited to simple, routine, repetitive tasks with few, if any, workplace changes and occasional interaction with supervisors, coworkers, and the public.

(Tr. 19).

In fashioning this RFC, the ALJ considered the medical evidence, the expert opinions, and Kishpaugh's self-described limitations. (Tr. 18-23). This analysis specifically considered the clinical and opinion evidence as it related to Kishpaugh's emotional impairments. On this score, the ALJ noted that:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because of the following reasons. Longitudinal treatment notes generally show the claimant is fully oriented with euthymic mood, congruent affect, appropriate speech, appropriate dress, appropriate thought content, intact memory, good recall, good attention and concentration, good insight, and good judgment (2F; 3F; 4F; 7F; 8F; 9F; 11F). During a March 2021 mental status consultative examination, the claimant was fully oriented, well groomed, and cooperative with normal posture, normal motor behavior, and appropriate eye contact. She had fluent and clear speech and adequate expressive and receptive language. She had clear sensorium, intact attention and concentration, average intellectual

functioning, appropriate general fund of information, fair insight, and good judgment (6F).

(Tr. 20-21).

Given this clinical history the ALJ found that the state agency and consulting examiner opinions regarding Kishpaugh's emotional RFC were generally persuasive, observing that:

> The record includes a March 2021 statement from a state agency psychological consultant, Karen Louise Plowman, PsyD, and an August 2021 statement from a state agency psychological consultant, Karen Evelyn Weitzner, PhD. They stated the claimant has moderate limitations understanding, remembering, or applying information; mild limitations interacting with others; moderate limitations concentrating, persisting, or maintaining pace; and mild limitations adapting or managing herself (1A/7-8; 3A/9-10). These statements are supported by the longitudinal treatment notes, which generally show the claimant is fully oriented with euthymic mood, congruent affect, appropriate speech, appropriate dress, appropriate thought content, intact memory, good recall, good attention and concentration, good insight, and good judgment (2F; 3F; 4F; 7F; 8F; 9F; 11F). These statements are also consistent with the claimant's lack of recent inpatient mental health treatment or referral to crisis intervention. Further, Dr. Plowman and Dr. Weitzner are highly qualified experts who had the opportunity to review the claimant's records. Accordingly, the undersigned finds these statements are persuasive. However, based on the medical evidence of record, the undersigned finds the claimant is slightly more limited as she has moderate limitations interacting with others and adapting or managing herself.

> The record contains a March 2021 statement from John Laurence Miller, PhD, who performed a mental status consultative examination on the claimant. Dr. Miller stated the claimant has moderate limitations in understanding, remembering, and carrying out instructions;

14

moderate difficulties interacting with supervisors, co-workers, and the public; and moderate difficulties in responding appropriately to usual work situations and to changes in a routine work setting (6F/7-8). This statement is supported by his examination of the claimant, which shows the claimant is fully oriented and cooperative with intact attention and concentration, fair insight, and good judgment (6F). The statement is also consistent with the claimant's lack of recent inpatient mental health treatment or referral to crisis intervention. Further, Dr. Miller is a highly qualified expert who had the opportunity to assess, evaluate, and examine the claimant. Thus, the undersigned finds Dr. Miller's statement is persuasive.

(Tr. 21-22).

In contrast, the ALJ afforded less persuasive power to the more extreme, outlier opinion of Kishpaugh's counselor, Jeanne Fisk, stating that:

This statement is unsupported by her treatment notes, which largely show the claimant is fully oriented with congruent affect, appropriate dress, normal speech, intact memory, good attention and concentration, appropriate thought content, good insight, and good judgment (9F; 11F). This statement is also unsupported because it is a checklist with limited explanation. Additionally, this statement is inconsistent with the claimant's activities of daily living, which shows she helps care for her 13-year-old daughter; has no problems with her personal care activities; and can prepare microwaved meals, do laundry, drive, shop in stores, and pay bills (Hearing Testimony; 7E). Further, this statement is inconsistent with the claimant's lack of recent inpatient mental health treatment or referral to crisis intervention.

(Tr. 22).

Having made these findings, the ALJ concluded that Kishpaugh was unable to perform her past relevant work but retained the ability to perform other jobs that

existed in significant numbers in the economy. (Tr. 23-25). Accordingly, the ALJ concluded that Kishpaugh had not met the exacting standards for disability and denied her claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Kishpaugh argues that the ALJ erred in evaluation of her severe and non-severe impairments and erred in finding the opinion of Kishpaugh's counselor, Jeanne Fink, unpersuasive. However, after a review of the record, we find that substantial evidence supported the ALJ's decision in this case and therefore will affirm the decision of the Commissioner.

## III.    Discussion

### A.    Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.

16

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our

review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d

Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

**B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant

is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

21

(quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at \*7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such

as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 433 (3d Cir. 1999).

### C.    <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions.</u>

Kishpaugh filed his disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations that defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the

Commissioner's regulations governing medical opinions changed in a number of

fundamental ways. The range of opinions that ALJs were enjoined to consider were

broadened substantially, and the approach to evaluating opinions was changed from

a hierarchical form of review to a more holistic analysis. As one court has aptly

observed:

> The regulations regarding the evaluation of medical evidence have been
> amended for claims filed after March 27, 2017, and several of the prior
> Social Security Rulings, including SSR 96-2p, have been rescinded.
> According to the new regulations, the Commissioner "will no longer
> give any specific evidentiary weight to medical opinions; this includes
> giving controlling weight to any medical opinion." <u>Revisions to Rules
> Regarding the Evaluation of Medical Evidence</u> ("<u>Revisions to Rules</u>"),
> 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), <u>see</u>
> 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner
> must consider all medical opinions and "evaluate their persuasiveness"
> based on the following five factors: supportability; consistency;
> relationship with the claimant; specialization; and "other factors." 20
> C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of
> medical sources, deference to specific medical opinions, and assigning
> "weight" to a medical opinion, the ALJ must still "articulate how [he
> or she] considered the medical opinions" and "how persuasive [he or
> she] find[s] all of the medical opinions." <u>Id</u>. at §§ 404.1520c(a) and
> (b)(1), 416.920c(a) and (b)(1). The two "most important factors for
> determining the persuasiveness of medical opinions are consistency and
> supportability," which are the "same factors" that formed the
> foundation of the treating source rule. <u>Revisions to Rules</u>, 82 Fed. Reg.
> 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered
> the supportability and consistency factors" for a medical opinion. 20

C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating

medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence

for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d

Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision

is accompanied by an adequate, articulated rationale, it is the province and the duty

of the ALJ to choose which medical opinions and evidence deserve greater weight.

> Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without
> crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015);
> Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that
> "SSR 96–2p does not prohibit the ALJ from crediting some parts of a
> treating source's opinion and rejecting other portions"); Connors v.
> Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June
> 10, 2011). It follows that an ALJ can give partial credit to all medical
> opinions and can formulate an RFC based on different parts from the
> different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

> It is against these legal benchmarks that we assess the instant appeal.

**D.    The ALJ's Decision is Supported by Substantial Evidence.**

In this setting, we are mindful that we are not free to substitute our

independent assessment of the evidence for the ALJ's determinations. Rather, we

must simply ascertain whether the ALJ's decision is supported by substantial

evidence, a quantum of proof which is less than a preponderance of the evidence but

more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's evaluation of Kishpaugh's non-severe impairments and the medical opinion evidence regarding her emotional impairments. Therefore, we will affirm this decision.

In this case, Kishpaugh challenges the substance of this medical opinion evaluation and, in particular, alleges that the AJ erred when he found Counselor Fisk's opinion unpersuasive. Kishpaugh also insists that the RFC in this case is fundamentally flawed. However, we find that when the ALJ's decision is read as a whole and in a commonsense fashion substantial evidence which is well set forth by the ALJ supports this decision.

On this score, with respect to medical opinions analysis:

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." <u>Id</u>. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with

respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Waltz v. Dudek, No. 3:24-CV-1020, 2025 WL 714382, at *10 (M.D. Pa. Mar. 5, 2025).

In this case, the ALJ's assessment of the persuasiveness of these medical opinions expressly addressed the issues of supportability and consistency. In this regard, the ALJ aptly noted that the state agency and consulting examining expert opinions are consistent with one another, and with Kishpaugh's clinical history and activities of daily living. Moreover, substantial evidence in this clinical record supported the ALJ's reliance on these opinions. This clinical history repeatedly found that Kishpaugh's speech, thought content, judgment, perception, and behavior were normal. There was no substantive error here.

Given this clinically well-supported medical consensus that Kishpaugh's emotional impairments were no more than moderate in their severity, the ALJ also reasonably concluded that Counselor Fisk's more extreme and outlying opinion failed the consistency and supportability tests prescribed by law. Indeed, this opinion was inconsistent with, and not fully supported by, Fisk's own treatment notes.

The ALJ's decision, read as a whole, also clearly articulated the rationale for this medical opinion analysis. On this score, the Court of Appeals' decision in Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019) is instructive. In Hess, the appellate court described the degree of articulation required in this area, explaining that that an ALJ offers a valid explanation for a simple task RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, which demonstrated that [s]he is capable of engaging in a diverse array of 'simple tasks[.]'" Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019). That is precisely what the ALJ did in this case. Fairly construed, the decision is grounded in the clinical and medical opinion evidence, along with Kishpaugh's activities of daily living. While the plaintiff may have preferred a more fulsome explanation of this medical opinion evidence, the ALJ's recital is all that the law requires.

Finally, to the extent that Kishpaugh suggests that the ALJ erred at Step 2 of this sequential analysis in determining that her physical impairments were not severe, the plaintiff misconstrues both the law and the evidence. At step-two of the sequential analysis, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 140-

41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities." 20 C.F.R. 404.1520(c). An impairment is severe if it is "something beyond a 'slight abnormality which would have no more than a minimal effect on the Plaintiff's ability to do basic work activities.'" McCrea v. Comm'r of Soc. Sec., 370 F.3d at 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856 (1985)). The burden is on the claimant to show that an impairment qualifies as severe. Bowen, 482 U.S. at 146, 107 S.Ct. 2287; Stancavage v. Saul, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).

Moreover:

[E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration.

Mercado v. Kijakazi, 629 F. Supp. 3d 260, 282 (M.D. Pa. 2022) (collecting cases).

In the instant case, substantial evidence supported to ALJ's Step 2 determination. The medical experts who considered Kishpaugh's physical impairments unanimously agreed that those conditions were not severe, and, as the ALJ noted, the conditions responded well to treatment. Given this evidence, the ALJ

correctly concluded that these conditions were not severe. Further, the ALJ expressly indicated that he: "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (Tr. 18). Therefore, even if the ALJ had erred in this Step 2 analysis, that error would have been harmless given the ongoing consideration of these impairments throughout the disability analysis.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Therefore, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case and affirm the decision of the Commissioner.

IV.    **Conclusion**

For the foregoing reasons, the decision of the Commissioner in this case will

be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: April 10, 2025